## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CANOO, INC., *et al.*,[1]<br><br>Debtors. | ) Chapter 7<br>)<br>) Case No. 25-10094 (BLS)<br>)<br>) (Jointly Administered)<br>)<br>) Re D.I. 161, 164, 165<br>) |

**TRUSTEE'S OBJECTION TO MOTION OF CHARLES GARSON FOR RELIEF FROM ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND SALE OF THE DEBTORS' ASSETS PURSUANT TO 11 U.S.C. § 363, AND (B) GRANTING RELATED RELIEF**

Jeoffrey L. Burtch, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), hereby objects (this "Objection") to the *Motion of Charles Garson for Relief From Order (A) Approving Asset Purchase Agreement and Sale of the Debtors' Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Related Relief* [D.I. 161] (the "Motion"), and in support of this Objection respectfully states:

### Background

1.      On January 17, 2025 (the "Petition Date"), the Debtors filed voluntary petitions with the Court for relief under chapter 7 of the Bankruptcy Code, commencing the above-captioned bankruptcy cases.  On or about the Petition Date, the Office of the United States Trustee appointed the Trustee.  On February 26, 2025, the 341 meeting was held and concluded, and the Trustee is now serving pursuant to section 702(d) of the Bankruptcy Code.

2.      Prior to the Petition Date, the Debtors manufactured custom-built electric cargo vehicles for large commercial and governmental customers globally, including governmental

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): Canoo, Inc. (25-10094 BLS); EV Global Holdco LLC (25-10095 BLS); EV US Holdco Inc., (25-10096 BLS); Canoo Technologies Inc. (25-10099 BLS); Canoo Manufacturing (25-10097 BLS); and Canoo Sales, LLC (25-10098 BLS).

agencies such as NASA and the department of defense.  The Debtors had ceased all operations as of the Petition Date, and the Trustee is not operating the business.

3.      On March 4, 2025, the Trustee filed a *Motion for Entry of an Order: Approving Asset Purchase Agreement Pursuant to 11 U.S.C. § 363 and (B) Granting Related Relief* [D.I. 51] (the "Sale Motion"), which, among other things, sought authority to sell a substantial portion of the Estates' assets to a certain buyer, WH Energy Solutions, Inc. (the "Buyer") via a private sale (the "Sale").

4.      As described in detail in the Sale Motion, time was of the essence in concluding the Sale.  The cost of maintaining the Debtors' assets was enormous compared to their estimated value,[2] and the Estates simply did not have the resources to continue paying the rents, storage fees, security costs, and insurance necessary to maintain the assets for more than a very short time.  The Purchased Assets were of dubious value given the effectively pre-revenue stage of the business, the custom – "made to order" – nature of the business, and the current challenging environment for "EV" businesses.  In addition, the continued storage of the significant battery and battery components inventory presented risk to the Estates.  In light of the significant accrual of administrative expenses as each day passed, and the nature of the business and the Purchased Assets, the Trustee needed a buyer that would move quickly to take possession of the assets, assume the administrative freight, and eliminate or reduce risk to the Estates.

5.      On another front, by the time of the filing of the Sale Motion, the Debtors' insurance premium financer was seeking to terminate the Debtors' insurance policies for non-payment of premiums.  The cost to continue the insurance was over $300,000 per month, which

---

[2] The Trustee engaged Hilco Global to provide a valuation of the Debtors' machinery and equipment and intellectual property in parallel with the sale process.  These assets are the principle assets that were sold to the Buyer.  Hilco's appraisal confirmed that the purchase price paid by the Buyer far exceeded the liquidation value of the Purchased Assets.

77220852\4

the Estates could not afford.   Prior to the sale hearing these policies were indeed terminated, leaving the Estates in a vulnerable position with uninsured property and no liability coverage.

6.      On still another front, a substantial portion of the Debtors' customized tools and vehicles were in the possession of their vendors around the world.   Without an immediate sale, the cost of monitoring and recovering these tools and vehicles would have been too great, and the Trustee would have soon needed to abandon them.

7.      On April 3, 2025, Mr. Garson first contacted the Trustee.   This initial contact was six days after the bid and objection deadline and one day after the original hearing date (which was adjourned for one week due to the Court's scheduling conflict).   Among other things, Mr. Garson requested "an additional 60 days to complete due diligence and prepare a bid."[3]   For the reasons mentioned above and in the Sale Motion, this time frame was impossible.[4]   Moreover, Mr. Garson's email to the Trustee provided no information whatsoever about his financial wherewithal, industry experience, or background.   In fact, Mr. Garson provided virtually no information about himself at all, much less any information relevant to evaluating his ability to fund and consummate a sale of substantially all of the Debtors' assets by early to mid-April.   As an example of just one question mark, the Trustee had no way to evaluate whether any offer from Mr. Garson would be subject to approval by the Committee on Foreign Investment in the United States ("CFIUS").   In their business the Debtors dealt frequently with the department of defense, NASA, and other government agencies.   The potential need for CFIUS approval was a serious

---

[3] A copy of Mr. Garson's April 3rd communication, which was by email, is attached as Exhibit A to the *Declaration of Charles Garson in Support of Motion to Reopen and Vacate Order (A) Approving Asset Purchase Agreement and Sale of the Debtors' Assets Pursuant to 11 U.S.C. § 363, and (B) Granting Related Relief* [D.I. 164].

[4] In addition, the Buyer's counsel informed the Trustee's counsel just prior to the hearing on the Sale Motion that the Buyer would not consent to the lengthy adjournment requested by the Movant and if there were to be an adjournment along the lines requested, then the Buyer likely would not proceed with the sale.

77220852\4

concern.  Even if approval were obtained, the resulting delay could have been catastrophic for the viability of any sale.

8.    After his introductory April 3rd email, Mr. Garson engaged in an email dialogue with the Trustee's counsel, during which the Trustee's counsel clearly informed Mr. Garson of the Trustee's requirements, including the need to close by mid-April.  At no point did Mr. Garson ever make a firm offer to buy the Purchased Assets, or any portion thereof, much less an offer that could have lead to a closing within the required time frame.  Despite, according to his Motion, having had somewhere between six and eleven days to do so, Mr. Garson did not submit a formal bid, and did not file any pleading with the Court indicating his opposition to the Sale Motion (whether a motion for leave to file a late objection or otherwise) or requesting an adjournment.

9.    Notwithstanding Mr. Garson's late entry to the sale process, the Trustee continued to engage with him, and provided him access to the virtual data room after the bid deadline.

10.    Eleven parties filed objections to the Sale Motion.[5]  Mr. Garson was not among them.  On April 9, 2025, the Court held a hearing on the Sale Motion and, later that day, entered an order granting the Sale Motion [D.I. 141] (the "Sale Order").  Mr. Garson did not attend the hearing.

11.    Among other things, the Sale Order: approved the Trustee's asset purchase agreement (the "APA") with the Buyer and all transactions contemplated therein; authorized the Trustee to enter into the APA and carry out the terms thereof; approved the sale of the Debtors' subject assets (as defined in the APA, the "Purchased Assets") to the Buyer pursuant to the APA;

---

[5] The Court overruled one of the objections, and adjourned consideration of the other ten, which did not oppose the Sale, but rather focused on assumption and assignment issues under section 365 of the Bankruptcy Code affecting the objectors' particular contracts and property.  The Buyer has already resolved several of these objections, and is working with the remaining objectors to resolve the balance.

and found that the Buyer's consideration was fair and reasonable and that the Sale, therefore, is not subject to avoidance under section 363(n) of the Bankruptcy Code. *See* Sale Order at ¶¶ 3, 4, 7.

12.     The Sale Order also provided:

> Buyer shall be deemed a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Purchased Assets shall not affect the validity of the sale of the Purchased Assets to Buyer.

*Id.* at ¶6.

13.     At the hearing, the Court ruled that the Sale Order would be effective immediately upon entry, notwithstanding Federal Rule of Bankruptcy Procedure 6004(h). *See* April 9, 2025 Hearing Transcript, p. 79 ("Based upon the record before me I am satisfied that cause has been demonstrated for a waiver of the Rule 6004 stay and I would admonish the Trustee to go forth and close."). Neither Mr. Garson nor any other party sought a stay of the Sale Order's effectiveness, and the Sale Order has indeed been in full force and effect since its entry. On April 11, 2025, the Trustee and the Buyer closed the Sale of the Purchased Assets pursuant to the APA and the Sale Order. *See Notice of Closing of Sale* [D.I. 155].

14.     On April 15, 2025, one of the parties who had objected to the Sale Motion, Harbinger Motors Inc., filed a *Notice of Appeal* [D.I. 151], thereby appealing the Sale Order to the United States District Court for the District of Delaware (the "District Court").

15.     On April 23rd, Mr. Garson filed his Motion. Mr. Garson is neither a creditor of, nor an interest holder in, the Estates. He never made a qualified bid (or a firm offer of any sort, qualified or not) to buy the Purchased Assets. He was not one of the objectors, and he did not attend the hearing. In short, he is a complete stranger to these cases. Moreover, the Sale has

already closed and been consummated, and this Court no longer has jurisdiction over the Sale Order due the pendency of the appeal.

16.     Despite the foregoing, Mr. Garson's Motion requests that the Court "vacate the Sale Order and direct the Trustee to reopen the sale process." For the reasons described in this Objection, the Motion is meritless and should be denied.

## Analysis

### A.    Mr. Garson lacks standing

17.     As mentioned, Mr. Garson is not a party in interest in these bankruptcy cases. He was not even a bidder. Accordingly, he lacks standing to challenge the Sale Order. *See*, *e.g.*, *In re New Energy Corp.*, 739 F.3d 1077 (7th Cir. 2014) (holding that party that was not creditor in the bankruptcy case lacked standing to challenge the sale order); *Spitz v. Nitschke*, 528 B.R. 874, 881 (E.D. Wis. 2015) ("[T]he provisions of the Bankruptcy Code regarding sales of property 'are intended to protect the creditors of such estates and not prospective purchasers' and thus 'unsuccessful bidders generally lack standing to challenge an order of sale under the zone of interests test.'") (quoting *Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc. (In re Phar-Mor, Inc.)*, 212 B.R. 283, 289 (N.D. Ohio 1997)); *In re HST Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991) ("[A]n entity, whose only interest in the proceeding was that it desired to purchase certain assets of the estate, was not within the 'zone of interests intended to be protected' under the bankruptcy statutes and regulations. Stated another way, 'the relevant bankruptcy statutes and rules were not enacted to protect prospective bidders'") (quoting *In re Nepsco, Inc.*, 36 B.R. 25 (Bankr. D. Me. 1983)).

18.     For this reason alone, Mr. Garson's motion should be denied.

77220852\4

**B.**     **The Court no longer has jurisdiction over the Sale Order**

19.     As mentioned, prior to the date on which Mr. Garson filed his Motion, the Sale

Order was appealed to the District Court.  Pursuant to the "divestment doctrine," the appeal

divested the Court of jurisdiction over the Motion.  Jurisdiction now lies with the District Court.

*See*, *e.g.*, *Carickoff v. Goodwin (In re Decade, S.A.C., LLC.)*, No. 18-11668, 2020 WL 1623632,

*3 (Bankr. D. Del. March 19, 2020) ( "Generally, the divestment doctrine provides: 'The filing

of a notice of appeal is an event of jurisdictional significance, conferring jurisdiction on the

appellate court, and divesting the court of origin of its control 'over those aspects of the case

involved in the appeal.'") (quoting *In re Pursuit Capital Management, LLC*, No. 14-10610, 2017

WL 2537234, *6 (D. Del. June 9, 2017)); *Iron Mountain Corp. v. AWC Liquidation Corp. (In re*

*AWC Liquidation Corp.)*, 292 B.R. 239, 242 (Bankr. D. Del. 2003) ("'It is a fundamental tenet of

federal civil procedure that – subject to certain, defined exceptions – the filing of a notice of

appeal from the final judgment of a trial court divests the trial court of  jurisdiction and confers

jurisdiction upon the appellate court.  This rule applies with equal force to bankruptcy cases.'")

(quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 578–79 (5th Cir. 2002)).

20.     Accordingly, while this Court retains the ability to *enforce* the Sale Order, it no

longer has the ability to vacate the Sale Order.  *See*, *e.g.*, *In re Decade*, 2020 WL 1623632 at *3

(clarifying that while a trial court no longer has jurisdiction to *alter* an appealed order, it retains

jurisdiction to enforce it so long as it is unstayed).

21.     For this reason alone, Mr. Garson's motion should be denied.

**C.**     **Mr. Garson's Motion is without merit**

22.     Putting aside Mr. Garson's lack of standing and the Court's no longer having

jurisdiction to alter the Sale Order, Mr. Garson's Motion should fail on its merits.  Relying on

7

Rules 60(b) and 59(e) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), applicable

via Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

<u>Rules</u>") respectively, Mr. Garson requests that the Court vacate the Sale Order and direct the

Trustee to reopen the sale process.

   (i)  <u>Mr. Garson is not entitled to relief under Federal Rule 59(e)</u>

   23.  "A motion for reconsideration under Rule 9023 may be granted where (i) there

has been an intervening change in controlling law; (ii) new evidence has become available; or

(iii) there is a need to prevent manifest injustice or to correct a clear error of fact or law." *In re*

*Energy Future Holdings Corp.*, 575 B.R. 616, 628 (Bankr. D. Del. 2017).  Regarding the term

"manifest injustice," this Court has explained:

> With respect to "manifest injustice," various courts have observed the following:
>
> There is no judicial consensus ... but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds.  A party may only be granted reconsideration based on manifest injustice if the error is apparent to the point of being indisputable.  In order for a court to reconsider a decision due to "manifest injustice," the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it.

*Id.* (quoting *In re Titus*, 479 B.R. 362, 367-68 (Bankr. W.D. Pa. 2012)).

   24.  Regarding the term "clear error of fact or law," this Court has explained,

"Similarly, courts have held that a 'clear error of law or fact' requires a finding that the error is

'plain and indisputable . . . amount[ing] to a complete disregard of the controlling law or the

credible evidence in the record.'"  *Id.* at 629 (quoting *In re Titus*, 479 B.R. 362, 368 (Bankr.

W.D. Pa. 2012)).

25.    Importantly, this Court has cautioned, "A motion for reconsideration under Rule 9023 may not be used as a vehicle to 'relitigate issues the Court has already decided,' nor should Rule 9023 'be used to advance arguments that a party could have made before judgment, but neglected to do so.'" *Id.* at 628 (quoting *In re W.R. Grace & Co.*, 556 B.R. 113, 118 (Bankr. D. Del. 2016); *Skretvedt v. E.I. DuPont de Nemours & Co.*, No. 98-61, 2009 WL 1649495, at *2 (D. Del. June 12, 2009)).

26.    Mr. Garson's Motion is unclear on when he first had notice of the Sale Motion. However, based on his representations in his supporting Declaration, he learned of the Sale Motion somewhere between six and eleven days prior to the hearing.  However, he decided not to object to the Sale.  He also decided not to attend the hearing on the Sale Motion.  Although the objection deadline passed on March 28th, if he indeed was not served and had no notice prior to that date, he could surely have sought leave to file a late objection.  Because Mr. Garson failed to object to the Sale Motion when he had an opportunity to do so, he should not be entitled to use Rules 9023 and 59(e) to advance arguments that he neglected to make prior to the entry of the Sale Order.

27.    Mr. Garson's failure to object aside, neither his Motion nor his Declaration supports his requested relief, or the disturbing of the Sale Order in any other way.  His chief complaint appears to be about the length of the sale process.  As explained in detail in the Sale Motion, the process was dictated by the exigencies faced by the Estates.  The Court was fully apprised of all aspects of the Trustee's sale process and of the surrounding circumstances. Considering the flexibility of the "business judgment" standard under section 363(b) of the Bankruptcy Code, the Court's decision to enter the Sale Order cannot possibly be said to have been the product of either "manifest injustice" or a "clear error of fact or law."  Indeed, the

77220852\4

Trustee submits that under the circumstances, his pivoting on the eve of the sale hearing from a bird-in-hand to a complete stranger who had not made a firm offer, and had provided no evidence of wherewithal or experience in the industry, or pertinent background information of any kind, would have been a dereliction of his fiduciary duty to the Estates.  To suggest the opposite, as Mr. Garson does, is preposterous.

28.     Mr. Garson implies that the Trustee's counsel misled him into believing that the Trustee would permit him to make a bid on his desired lengthy time-frame.  This accusation warrants little discussion, as the emails attached to Mr. Garson's own Declaration belie his argument.  As those emails show, the Trustee's counsel clearly informed Mr. Garson that the Trustee intended to pursue the Sale to the Buyer on the time frame set out in the Sale Motion, and that if Mr. Garson wished to make a bid he would have needed to do so on that same time frame.  As mentioned in his Declaration in support of the Sale Motion, up until the day prior to the sale hearing the Trustee would have been open to firm over-bids on an acceptable time frame, whether from Mr. Garson or any other party.  *See Declaration of Jeoffrey L. Burtch in Support of Trustee's Motion for Entry of Order Approving Sale of Assets* [D.I. 136], at ¶7.

29.     Finally, Mr. Garson casts aspersions on the pre-sale conduct of the Buyer's principal, Mr. Tony Aquila.  These aspersions also warrant little discussion, as they have nothing to do with the Buyer's good faith during the sale process.[6]  Mr. Garson proffers no evidence whatsoever to the effect that the Buyer acted in bad faith in any aspect of the sale process and/or that the Sale was anything other than an arm's length transaction.

30.     For all of these reasons, Mr. Garson's request that the Court vacate the Sale Order pursuant to Federal Rule 59(e) is meritless.

---

[6] Neither the Buyer, nor Mr. Aquila, received releases under the APA, and therefore any claims the Estates may have against Mr. Aquila are reserved and preserved, except for the purchase of a limited number of potential preferences actions by the Buyer.

77220852\4

(ii)    Mr. Garson is not entitled to relief under Federal Rule 60(b)

31.    "The Third Circuit has stated that 'when a court is considering its own judgment, 'extraordinary circumstances' must be present to justify the use of Rule 60(b) to vacate the judgment.'"  *Id.* at 630 (quoting *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008)). "'The framers of Rule 60(b) set a higher value on the social interest in the finality of litigation.' A movant 'bears a heavy burden' in showing that relief is appropriate under Rule 60."  *Id.* (quoting *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991); *In re Syntax–Brillian Corp.*, 551 B.R. 156, 160 (Bankr. D. Del. 2016)).

32.    Little practical difference exists between an analysis under Federal Rule 60 and one under Federal Rule 59(e).  *See*, *e.g.*, *Id.* ("As to the 'substance' the review under both Rule 9023 and Rule 9024 boils down to this — 'the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.'") (quoting *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999))

33.    For all of the reasons discussed above in the context of Federal Rule 59(e), Mr. Garson's request that the Court vacate the Sale Order pursuant to Federal Rule 60(b) is likewise meritless.

**D.    Mr. Garson's challenge to the Sale Order is equitably moot**

34.    As mentioned, the Sale closed on April 11, 2025.  Neither Mr. Garson nor any other party sought a stay of the Sale Order's effectiveness.  The Trustee acknowledges that the United States Court of Appeals for the Third Circuit has been lukewarm to the possible application of the "equitable mootness" doctrine in the context of a sale order, as opposed to a plan confirmation order.  *See In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015) ("Outside the plan context, we have yet to hold that equitable mootness would cut off our

authority to hear an appeal, and do not do so here."). However, the Trustee notes that from a practical standpoint, any attempt to reopen the sale process would be virtually impossible.

35. Among other reasons is the fact that the Trustee would have no ability to store, maintain, insure, or market the Purchased Assets. Even if, hypothetically, the *status quo ante* were completely restored, the result would likely be that the assets would lose most of their value and/or that the Trustee would need to abandon them. For all practical purposes, however, restoration of the *status quo ante* is impossible. The Sale has closed, the Purchased Assets have been transferred to the Buyer, the Buyer has begun operating the business, agreements have been reached with numerous counterparties to contracts and leases, and all parties concerned have taken actions in reliance on the Sale Order that cannot now be undone. For example, NASA has a launch later this month, and the Trustee understands that the Buyer has taken steps to perform Canoo's role in the launch.

36. The relief that Mr. Garson requests is simply not possible. For this reason, as well as all of the other reasons described above, the Trustee respectfully submits that Mr. Garson's Motion should be denied.

WHEREFORE, the Trustee respectfully requests that the Court enter an order, in substantially the attached form: (i) denying the Motion with prejudice and (ii) providing any additional relief that may be appropriate.

Dated: May 6, 2025

**COZEN O'CONNOR**

*/s/ Simon E. Fraser*
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
Gregory F. Fischer (No. 5269)
1201 N. Market St., Ste. 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail: mfelger@cozen.com
sfraser@cozen.com
gfischer@cozen.com

*Counsel for Jeoffrey L. Burtch,*
*as Chapter 7 Trustee*

13